UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    vs.                                                                                                   1:19-cr-156
                                                                                                            (MAD)
ZHENG Xiaoqing and ZHANG Zhaoxi

                                  **Defendants.**

---

**APPEARANCES:**                                                      **OF COUNSEL:**

**UNITED STATES DEPARTMENT**                     **RICHARD D. BELLISS, AUSA**
**OF JUSTICE**                                                        **ALICIA SUAREZ, AUSA**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorneys for the United States

**LUIBRAND LAW FIRM, PLLC**                       **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorneys for Zheng Xiaoqing

**BREEDING HENRY BAYSAN PC**                **BRADLEY L. HENRY, ESQ.**
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, New York 10006
Attorneys for Zheng Xiaoqing

**BREEDING HENRY BAYSAN PC**                **MATTHEW WILLIAM OLINZOCK,**
900 South Gay Street, Suite 950                            **ESQ.**
Knoxville, Tennessee 37902
Attorneys for Zheng Xiaoqing

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Defendant Zheng Xiaoqing has been charged with stealing and conspiring with others to steal certain trade secrets involving turbine technology from his employer, the General Electric

Company ("GE").  *See* Dkt. No. 25 at ¶¶ 19-21.  Specifically, the indictment alleges conspiracy to commit economic espionage, conspiracy to commit theft of trade secrets, economic espionage, and theft of trade secrets in violation of the Economic Espionage Act ("EEA") (Title 18, United States Code, Sections 1831 and 1832), and false statements in violation of Title 18, United States Code, Section 1001.  *See id.* at ¶¶ 22-104.  Defendant planned to use the allegedly stolen technology to establish a competing business in China.  *See* Dkt. No. 37 at 4.

The case is now ready for discovery.  Anticipating that discovery will include confidential materials and/or trade secrets (hereinafter, "Sensitive Materials"), the parties have been negotiating a proposed protective order ("PPO").  *See id.* at 5.  Although they agree on most of the terms of the PPO, the parties disagree about certain provisions concerning witnesses who are given access to the Sensitive Materials.  *See id.*  Those provisions are: (1) a provision that requires anyone who will have access to the Sensitive Materials to be pre-screened by GE to ensure that there are no conflicts of interest (hereinafter, the "Witness Disclosure Provision"), (2) a provision prohibiting anyone who reviewed the Sensitive Materials from working for a competitor of GE for two years (hereinafter, the "Non-Compete Provision"), and (3) a provision discussing how the Sensitive Materials will be stored and transmitted among the defense team (hereinafter, the "Storage and Transfer Provision").  *See id.*

The parties have asked the Court to resolve these disputes.

## II. DISCUSSION

**A.     Protective Orders in Criminal Cases**

The Court's authority to issue protective orders in criminal cases derives from Federal Rule of Criminal Procedure 16(d), which provides that a court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P.

16(d)(1); *see also United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) (noting that Rule 16(d)(1) "authorizes the district court to limit or otherwise regulate discovery").  The court has broad discretion in determining whether to issue a protective order under Rule 16(d)(1).  *See* 25 James Wm. Moore et al., Moore's Federal Practice - Criminal Procedure § 616.02 (2019); *see also In re Terrorist Bombings of U.S. Embassies in E. Afr. v. Odeh*, 552 F.3d 93, 123 (2d Cir. 2008) (reviewing for abuse of discretion).

  Good cause to restrict discovery exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (quotation omitted).  "A finding of harm must be based on a particular factual demonstration of potential harm, not on conclusory statements."  *Id.* (quotation omitted); *see also United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (noting that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing") (quotation omitted).  The party seeking the protective order bears the burden of demonstrating good cause.  *See Smith*, 985 F. Supp. 2d at 522; *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) ("The party seeking a protective order [under Fed. R. Civ. P. 26(c)] has the burden of showing that good cause exists for issuance of that order") (internal quotation marks and brackets omitted).

  The EEA, which was enacted to combat increasing threats to corporate security and the rising tide of international and domestic economic espionage, protects proprietary information from misappropriation.  *See United States v. Hsu*, 155 F.3d 189, 194-95 (3d Cir. 1998).  Title 18, United States Code, Section 1835 of the EEA states that "[i]n any prosecution . . ., the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal

and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws." 18 U.S.C. § 1835. Thus, the protection of trade secrets is one reason for which courts have issued protective orders. *See Hsu*, 155 F.3d at 205 (holding that a protective order was appropriate to protect trade secrets, but that the court abused its discretion in accepting redactions by the alleged victim rather than reviewing the unredacted documents); *United States v. Aluminum Co. of Am.*, 232 F. Supp. 664, 665-66 (E.D. Pa. 1964) (holding that, in order to prevent the disclosure of a non-party's trade secrets to its competitors, the defendants were only entitled to discovery of the documents that the Government intended to use at the trial); *see also Cities Service Oil Co. v. Celanese Corporation of America*, 10 F.R.D. 458 (D. Del. 1950) (stating that "the disclosure of information which embraces such secrets should not be compelled unless and until it is clear that the [party] will definitely be deprived of the proper and necessary means to prepare and prove its case if the opportunity to inspect and examine [the information] is not afforded to it").

Still, the interests of protecting sensitive information must be weighed against other relevant interests, including how such protection would affect a criminal defendant. *See Smith*, 985 F. Supp. 2d at 523 (noting that, in a criminal case involving a proposed protective order, the court must balance several interests, "including whether dissemination of the discovery materials inflicts 'hazard to others,'" and whether 'the imposition of the protective order would prejudice the defendant'") (quoting *United States v. Carriles*, 654 F. Supp. 2d 557, 566 (W.D. Tex. 2009)); *see also United States v. Fishenko*, No. 12-CV-626, 2014 WL 5587191, *2 (E.D.N.Y. Nov. 3, 2014) (noting that the court must protect the rights of accused defendants while also considering other legitimate concerns). One important interest for the court to consider is the criminal defendant's constitutional right to "be afforded 'a meaningful opportunity to present a complete defense.'"

*Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

In *Aluminum Co. Of Am.*, while considering whether to issue a protective order to prevent the dissemination of trade secrets in a criminal case, the court explained:

> What we are really faced with here is a balancing of interests. On the one hand is [the] need of defendants for adequate preparation of a defense. On the other hand is the need of [a company], not a party to this case and here only because the Government subpoenaed its records, to prevent disclosure to its competitors of information which might enable them to capture some of its business. The solution of these conflicting interests depends upon a determination of where lies the more compelling need . . .

232 F. Supp. at 665; *see also Hsu*, 155 F.3d at 197 (noting that Section 1835 "aims to strike a balance between the protection of proprietary information and the unique considerations inherent in criminal prosecutions"). The court should "take care to ensure that the protection afforded to such information is no broader than is necessary," and should "weigh the impact this might have on a defendant's due process right to prepare and present a full defense at trial." *See United States v. Lindh*, 198 F. Supp. 2d 739, 741-42 (E.D. Va. 2002) (narrowly tailoring a protective order to accommodate national security goals).

Here, the Government has met its burden of showing good cause for protection of the Sensitive Materials. In a letter to the Court, which the Government submitted in support of its motion, GE identifies the clearly defined, specific, and serious injury that it will suffer if the Sensitive Materials fall into the hands of its competitors. *See Smith*, 985 F. Supp. 2d at 523 (stating that "[g]ood cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury") (quotation omitted). Specifically, GE states:

> The trade secrets involved in this case are present in electronic files containing computer models, material specifications, design drawings, assembly drawings, and vendor information. Some of

> these files contain such extensive engineering information that they are tantamount to recipe manuals for manufacturing and/or servicing of the related GE Power technology. As such, GE is very interested in ensuring that effective controls are prescribed by the Court to prevent further cyber-threats and/or inappropriate dissemination or misappropriation of the material.

*See* Dkt. No. 37 at 21. GE explains that their concern is heightened here because of "the defendant's potential ties to state-sponsored economic espionage, and the nefarious and advanced methodologies he used to steal the information." *See id.*

Based on these specific, factual demonstrations of the harm that may befall GE, the Government has established good cause to protect the Sensitive Materials. Still, the parties disagree over what that protection should entail.

**B.   Witness Disclosure Provision**

The proposed Witness Disclosure Provision requires Defendant to provide GE with the identity of any potential fact or expert witness and consultant to whom the defense intends to show the Sensitive Materials so that GE can determine whether that individual has a conflict of interest that would threaten the secrecy of the Sensitive Materials.[1] *See id.* at 5.

---

[1] In full, the proposed Witness Disclosure Provision reads as follows:

> The defense and Defendant may describe or provide copies of the Sensitive Discovery Materials to any expert, consultant, potential expert witness or consultant, or fact witness the defense believes is necessary in preparing its defense, retained by them, whether testifying or non-testifying, but only if:
>
> a. Before making such disclosure, the defense and Defendant notifies GE in writing (via email and overnight mail) of the their [sic] intent to provide Sensitive Discovery Materials to an expert witness, consultant, potential expert witness or consultant, or fact witness, and provides GE with a copy of the expert, consultant, or potential expert witness or consultant or fact witness' resume or curriculum vitae. If the defense and Defendant do not have to

(continued...)

6

Defendant argues that such disclosure would cause his defense strategy to be "exposed and compromised," because GE will learn the identities of all of Defendant's consulting experts and potential witnesses, regardless of whether they are called to testify. *See* Dkt. No. 38 at 11. According to Defendant, this "effectively gives [the Government's] *de facto* agent, GE, the right to interfere with and control Dr. Zheng's defense." *Id.* at 5.

Some civil cases have noted that where the primary goal is to ensure the confidentiality of information and not to obtain an unfair advantage of one's opinion, the identity of non-testifying

---

[1](...continued)
>
> disclose the identity of its expert or consultant to the government at such time, then defense counsel need only make such disclosure at that time to GE. Similarly, while GE may discuss the identity of the expert or consultant among themselves, they shall not attempt to contact the expert witness or consultant or potential expert witness or consultant (or the employer thereof) nor shall they disclose such identities to, or discuss such identities with, the government or any other third party, at least until such time as defense counsel subsequently must disclose such identity to the government. For the avoidance of doubt, the disclosure of an expert witness or consultant or potential expert witness or consultant to GE shall not operate as any manner of waiver of attorney-client privilege or attorney work product by the Defendant.
>
> b. Within the five business days after receiving such notice, GE may object in writing to the disclosure to the expert witness, consultant, potential expert witness or consultant, or fact witness for good cause shown. If no objection is received within the relevant period, the defense and Defendant may provide a single copy of the Sensitive Discovery Materials to the potential expert witness.
>
> c. If the parties are unable to resolve any such objection, the defense and Defendant may seek relief from the Court by way of motion filed under seal to keep confidential the identity of the expert witness, consultant, potential expert witness or consultant, or fact witness in dispute.

*See* Dkt. No. 38-1 at ¶ 9(a)-(c).

experts should be disclosed. *See Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, No. 98-CV-1434, 1999 WL 33454801, *6-7 (D.N.J. Nov. 12, 1999) (finding that where a party is seeking a protective order to protect highly confidential information, "the desirability, if not necessity, of obtaining the identity of an opponents' consultants rests primarily on the need to ensure the confidentiality of the information and not on an attempt to gain an unfair advantage"); *see also In re Neubauer*, 173 B.R. 505, 507-08 (D. Md. 1994) (holding that Rule 26(b)(4) is not implicated where the party seeking the identity "only wants the opportunity to prevent competitors from gaining access to its confidential business information").  At the same time, the Second Circuit has noted that if "a party in a commercial suit obtains a competitor's trade secrets, at worst the party will gain an unfair financial advantage over his competitor." *In re The City of New York*, 607 F.3d 923, 936 (2d Cir. 2010).  Although "such an injury is serious . . . it can usually be remedied by an injunction or money damages." *Id.* (noting that in such cases, it is "obvious that an unauthorized disclosure has occurred" and there is often "little trouble identifying the source of the disclosure").

  Relying on Federal Rule of Civil Procedure 26(b)(4)(D) and civil cases interpreting that rule, the Government focuses its argument on whether the identity of a non-testifying witness or consultant is attorney work product, and therefore, is protected from discovery unless the party can demonstrate a "substantial need" for that information.  *See* Dkt. No. 37 at 9-11.  Rule 26(b), which provides that a party ordinarily may not discover "facts known or opinions held" by another party's non-testifying expert absent a showing of "exceptional circumstances," does not apply to criminal cases.  *See* Fed. R. Civ. P. 26(b)(4)(D).  Therefore, while civil authority is helpful to consider here, the cases applying Rule 26(b) are not entirely applicable because they do not have to consider the constitutional right of a criminal defendant to mount a complete defense.

*See Hsu*, 155 F.3d at 198 n.12 (noting that the defendants' argument based on "Federal Rule of *Civil* Procedure 26(c) and on the cases interpreting its requirements in *civil* actions" did not apply "where the government seeks to protect trade secrets in a criminal prosecution under the provisions of the EEA") (emphasis in original).[2]

Here, the Court finds that the PPO strikes the appropriate balance between GE's concern in keeping its Sensitive Materials out of the public's eye and Defendant's interest in mounting a defense. *See Aluminum Co. Of Am.*, 232 F. Supp. at 665. As the Government points out, the PPO tracks the language of model protective orders provided by the United States Patent and Trademark Office ("USPTO") and the Northern District of New York.[3] *See* Dkt. No. 37 at 12-13. Although the Witness Disclosure Provision requires that Defendant notify GE of the identities of experts, consultants, or potential witness to whom he intends to provide the Sensitive Materials, it does not compel disclosure to the Government, and includes safeguards to prevent the

---

[2] Moreover, civil cases interpreting Rule 26(b) have disagreed as to whether a party seeking disclosure of the identity of non-testifying experts must meet Rule 26(b)'s "exceptional circumstances" standard. *See, e.g.*, *Manzo v. Stanley Black & Decker Inc.*, No. 13-CV-3963, 2015 WL 136011, *2 (E.D.N.Y. Jan. 9, 2015) (stating that the identities of non-testifying experts may be disclosed without a showing of exceptional circumstances); *Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14-CV-1559, 2015 WL 4597546, *3 (S.D.N.Y. July 30, 2015) (requiring a showing of exceptional circumstances before disclosure).

[3] The Northern District of New York's model Patent Protective Order requires the party seeking to disclose confidential information to an expert or consultant to first "serve the producer with a written identification of the expert or consultant and a copy of his or her *curriculum vitae*" at least fourteen days before such disclosure. *See* Patent Protective Order, Northern District of New York, https://www.nynd.uscourts.gov/forms/patent-protective-order. The producer has fourteen days to object to the disclosure for good cause. *Id.* Similarly, the USPTO's Standard Protective Order requires the party proposing to share such confidential information with an independent expert or consultant to notify the party who designated the information as protected of "the name, address, occupation and professional background of the expert or independent consultant," and gives the party receiving notice ten business days to object to disclosure). *See* Standard Protective Order, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/appealing-trademark-decisions/standard-documents-and-guidelines-0.

Government from obtaining that information when they otherwise would not be entitled to it.  *See* Dkt. No. 38-1 at ¶ 9(a) (stating that "[i]f the defense and Defendant do not have to disclose the identity of its expert or consultant to the government at such time, then defense counsel need only make such disclosure at that time to GE"); *id.* (prohibiting GE from discussing the identity of the potential witness or expert with the Government or any other third parties, or contacting that expert).  Therefore, the Court disagrees with Defendant's claim that the Witness Disclosure Provision causes him to reveal his defense.  *See* Dkt. No. 38 at 11.  Rather, the Court finds that such limited disclosure to non-party GE appropriately balances the EEA's mandate to protect "the confidentiality of trade secrets" with Defendant's constitutional protections.  *See Hsu*, 155 F.3d at 197 (noting that while Section 1835 "does not, of course, abrogate existing constitutional and statutory protections for criminal defendants," it does "represent a clear indication from Congress that trade secrets are to be protected to the fullest extent during EEA litigation").

Moreover, although typically the harm that results when a competitor obtains another's trade secrets is easily remedied by "an injunction or money damages," *see In re The City of New York*, 607 F.3d at 936, the factual allegations here suggest that the harm that would result if the Sensitive Materials fell into the wrong hands would not be so easily rectified.  The Defendant allegedly used "nefarious and advanced methodologies" in a potentially "state-sponsored economic espionage" scheme involving his business in the People's Republic of China.  *See* Dkt. No. 37 at 4, 21. According to GE, the Sensitive Materials "contain such extensive engineering information that they are tantamount to recipe manuals for manufacturing and/or servicing of the related GE Power technology."  *Id.* at 21.  GE would be greatly harmed if its competitors in China attained those "recipe manuals," and such injury could be very difficult for a court to remedy.  Therefore, although disclosure burdens Defendant and his legal team to some extent, the Court

believes that the proposed Witness Disclosure Provision is appropriately tailored to protect the Sensitive Materials at stake in this case.  *See Lindh*, 198 F. Supp. 2d at 741-42.

Finally, GE's ability to object to disclosure does not interfere with Defendant's defense strategy or grant GE "veto power over the experts or consultants Dr. Zheng hires."  *See* Dkt. No. 38 at 10-11.  For one thing, GE's objection does not operate as a "veto" over the witness, but exists to give GE the opportunity to express its concerns to Defendant, and possibly, to the Court.  *See* Dkt. No. 38-1 at ¶ 9(b)-(c) (noting that if GE makes an objection, the parties will try to resolve the objection, and if their attempt at resolution is unsuccessful, "Defendant may seek relief from the Court").  The purpose of allowing such objections "is to ensure the confidentiality of information and not to obtain an unfair advantage" in the litigation.  *See Biovail Corp. Int'l*, 1999 WL 33454801, at \*6-7.  GE is not a party in this case, and has absolutely no stake in this criminal prosecution.  Thus, there is nothing to corroborate Defendant's claim that GE is a "*de facto* agent of the Government*,*" simply because GE was allegedly victimized by Defendant.  Further, the PPO explicitly prohibits GE from sharing the identity of the expert witnesses with the Government (or anyone else).  *See* Dkt. No. 38-1 at ¶ 9(a).  Accordingly, the Court is satisfied that the fact that GE will know the identities of Defendant's witnesses or consultants will not interfere with Defendant's ability to present his defense.  *See Smith*, 985 F. Supp. 2d at 523.

In sum, this Court is faced with a balancing of interests between Defendant's need to adequately prepare a defense, and the need of GE, not a party to this case and here only as an alleged victim of a crime, "to prevent disclosure to its competitors of information which might enable them to capture some of its business."  *See Aluminum Co. Of Am.*, 232 F. Supp. at 665.  Since GE's interest in keeping its Sensitive Materials out of the hands of a competing business in

11

a foreign country is compelling, and the Witness Disclosure Provision only minimally burdens Defendant, the Court holds that the Witness Disclosure Provision should remain in the PPO.

## C.     Non-Compete Provision

Next, the parties disagree about the Non-Compete Provision, which states:

> Any expert or consultant who receives and/or reviews information designated as Sensitive Discovery Materials shall not work as a consultant, employee, officer, owner, or agent of a competitor to GE Aviation and GE Power for two years following the cessation of this prosecution at the trial court level. These restrictions may be modified only for good cause s

*See* Dkt. No. 38-1 at ¶ 9(d).  The Government argues that such a provision is necessary to protect GE from "the opportunity for a conflict . . . [to] . . . arise if the expert decides later to work for one of GE's competitors."  *See* Dkt. No. 37 at 14.  However, Defendant protests that this provision "will prevent Dr. Zheng from retaining any experts to assist in his defense in violation of the Sixth Amendment's right to effective assistance of counsel."  *See* Dkt. No. 38 at 13 (stating that "[i]t would be nearly impossible for such an expert or consultant retained by Dr. Zheng to find any other industry employment for at least two years").

The Court agrees with Defendant, and finds that the Non-Compete Provision would make it extremely difficult for him to retain any expert or consultant to work on his case. *See AGA Med. Corp. v. W.L. Gore & Assocs., Inc.*, No. 10-CV-3734, 2011 WL 13135783, *13 (D. Minn. Dec. 13, 2011) (noting that if the plaintiff "is going to insist that any proposed expert not work for a competitor in the . . . industry for over a year after a final non-appealable order is entered, it is either highly unlikely that any expert would agree to such a draconian measure, or in response to such a requirement, would dramatically increase the costs for any party to retain an expert); *Turbine Components v. Sequa Corp.*, No. 91-CV-1752, 1992 WL 6196 at *1 (S.D.N.Y. Jan. 3, 1992) (rejecting such a provision because "a blanket presumption against experts serving in the

12

future as consultants to any rival firm in the area of their expertise is likely to make the hiring of independent experts in many fields either difficult or impossible"). Here, the non-compete provision would make it extremely difficult or even impossible for Defendant to hire an expert, thereby impeding his constitutional right to "be afforded 'a meaningful opportunity to present a complete defense.'" *See Zarvela*, 364 F.3d at 418 (quoting *Crane*, 476 U.S. at 690).

Moreover, the Non-Compete Provision is not necessary to prevent experts from using the Sensitive Materials to their own advantage, since the agreed-upon terms of the PPO already require the potential expert or consultant to "agree[] to maintain all Discovery Materials in accordance with the above procedures as if they were members of the defense, and solely for the purposes of assisting the defense in this case, and not for any commercial or other purpose." *See* Dkt. No. 38-1 at ¶ 9(e); *see also id.* at ¶ 5(a) (stating that "[t]he defense and Defendant shall use the Discovery Materials solely and exclusively in connection with this case . . ., and not for any commercial or other purpose"). Although the Government proposes the Non-Compete Provision as "a means of enforcing [that] acknowledgment," there is nothing to suggest that Defendant's experts would violate Paragraph 9(e) otherwise. *See AGA Med. Corp.*, 2011 WL 13135783, at *12 (concluding, where the plaintiff offered no proof that an expert intended to disseminate confidential information that she learned as an expert, that the defendant's interest in using that expert outweighed the theoretical danger of disclosure of protected information or use of that information to compete with the plaintiff).

Finally, the Court agrees with Defendant that the non-compete provision would likely be unenforceable as against public policy if it was entered into between private parties, since the provision is not limited to a particular geographic location or type of business. *See* Dkt. No. 38 at 14-15; *Reed, Roberts Assocs. Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976) (noting that a non-

compete agreement will only be enforced "to the extent that it is reasonable in time and area"); *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 370 (2015) (noting that New York strictly construes non-compete covenants "because of the powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood") (quotations omitted).

"[E]ven in highly contentious litigation between business rivals, the protections [Defendant] [is] seeking appear to be unprecedented." *See In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, No. 11-CV-5468, 2013 WL 6490343, *4 (N.D. Ill. Dec. 10, 2013) (noting that "[t]his court has been similarly unable to find any such precedent in the Seventh Circuit (or elsewhere) either approving or disapproving of [mandatory non-compete agreement on an opposing party's experts]"). Accordingly, the Court directs the parties to remove the Non-Compete Provision from the PPO.[4]

### D.     The Storage and Transfer Provision

Finally, Defendant requests a provision that would allow his legal team to "transmit materials via encrypted email between one another to facilitate or maintain the material on a secure cloud-based [sic] with access limited to attorneys and the attorney's staff." *See* Dkt. No. 38-1 at Defense Proposed Subparagraph 6(a). The Government objects to that provision because "it creates opportunities for sensitive materials to be mishandled." *See* Dkt. No. 37 at 16 (arguing that this would allow "any attorney or staff member with access to those e-mails on cell phones,

---

[4] The Government also argues that the USPTO's Standard Protective Order "similarly addresses restrictions on experts in intellectual property cases." *See* Dkt. No. 37 at 15. The USPTO's Standard Protective Order, however, does not include a non-compete provision, but rather prohibits current or former employees from serving as experts privy to protected information. *See* Standard Protective Order, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/appealing-trademark-decisions/standard-documents-and-guidelines-0.

laptops, and any other electronic devices with e-mail capabilities" to access the Sensitive Materials and the "e-mails would also reside on servers potentially outside the control of defense counsel"). Instead, the Government proposes that defense counsel store the Sensitive Materials "at their secure offices in the United States and on one or more computers that are firewall protected from outside malware incursion," *see* Dkt. No. 38-1 at ¶ 6(a), and transfer those materials only "by external electronic media devices, such as DVDs or USB drives," *see* Dkt. No. 37 at 17. Defendant argues that these restrictions interfere with his Sixth Amendment right to effective assistance of counsel. *See* Dkt. No. 38 at 15-17 (claiming that under such restrictions, there "would be no way for Dr. Zheng and his legal team to effectively work together and with their experts to review, analyze, and exchange notes on the GE trade secret documents in an efficient matter" because his legal team sits in different physical locations).

The Court finds that the requirement that the Sensitive Materials are maintained on firewall-protected computers in defense counsel's offices strikes the correct balance between Defendant's right to effective assistance of counsel and GE's legitimate concerns in protecting its Sensitive Materials. In its letter to the Court, GE requests that "any discovery methodology chosen by the Court does not result in files being transferred into the possession of 3rd parties to include defense consultants due to the inherent risk of loss by GE once the government and/or defense teams lose direct control of the same." *See* Dkt. No. 37 at 22. That is a reasonable request, since third parties may not have the same level of firewall protections and security on their computers that the parties have agreed to maintain. Additionally, the Court agrees with the Government's proposed restrictions on the means of transmitting the Sensitive Materials, since email is not a secure means of transmitting information, and such restrictions would protect the Sensitive Materials from potential cyber-attacks. Finally, the Court finds that Defendant's right to

effective assistance of counsel is not impeded by these limitations, since defense counsel can still review the documents on their own computers and transfer them via external electronic media devices.

Still, as Defendant points out, the Government's proposed Storage and Transfer Provision only applies to Defendant and his legal team, and does not place "any restrictions on the government's handling of the alleged trade secret documents, allowing it to freely use such technologies to communicate among its attorneys and investigators . . . ." *See* Dkt. No. 38 at 17. If the purpose behind the Transfer Provision is truly to prevent cyber-attacks and ensure the confidentiality of the Sensitive Materials, then the provision should apply equally to everyone accessing the material. Accordingly, the parties are directly to modify the Storage and Transfer Provision so that it applies to both the Government and Defendant.

### III.  CONCLUSION

After careful review and for the above-stated reasons, the Court hereby

**ORDERS** that the Government's Motion for a Discovery Protective Order is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that the parties should submit a new proposed Protective Order that conforms to the Court's rulings as discussed herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 8, 2019

_____
Mae A. D'Agostino
U.S. District Judge